IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

PATRICK JAMES GRIDER,                )
                                     )
    Plaintiff,                       )
                                     )
v.                                   )     Case No. 3:23-cv-287-RAH
                                     )              [WO]
CITY OF AUBURN, ALA., *et al.*,      )
                                     )
    Defendants.                      )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Pending before the Court are the Defendants' motions to dismiss. The motions are fully briefed and thus ripe for decision. For the reasons set forth below, Defendant City of Auburn and Defendant Stephanie Johns's *Motion to Dismiss* is GRANTED in part. Defendant Kimberly Costen's *Motion to Dismiss* is DENIED as moot.

### II. FACTS AND PROCEDURAL HISTORY

In describing the lengthy set of facts giving rise to this lawsuit, the Court construes the factual allegations in the First Amended Complaint (FAC) as true, as it must at the motion to dismiss stage, but "exclud[es] the pleadings not entitled to the assumption of truth due to their conclusory nature." *Turner v. Williams*, 65 F.4th 564, 572 (11th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Plaintiff Patrick James Grider owns an interest in Sky Bar, a bar located in Auburn, Alabama. In late January 2022, Kimberly Costen, an employee at Sky Bar, reported to the Auburn Police Department (APD) that Grider had groped her at Sky

Bar during the early morning hours of January 20, 2022.  According to Grider, this report was false.

After initially speaking with APD officer Leslie Nichols, who prepared an Incident Offense Report, APD Detective Stephanie Jones investigated and interviewed Costen.  Grider finds fault with that investigation, including that:

- Costen was allowed to access her cellphone during her interview with Johns;

- Costen was permitted to write a second statement describing the incident, and the first statement and any associated notes from that statement were not preserved;

- Johns failed to preserve her notes from the interview with Costen;

- APD interviewed only one witness, Bethany Carlson, despite Costen having identified several additional witnesses to the groping incident; and

- APD failed to request that Sky Bar preserve video from the night of the incident, despite having prior knowledge that Sky Bar's 24-hour video recording system only retained video for 30 days.

Grider also alleges that the APD knew or should have known that Costen's groping report was false because (1) Costen revealed to the APD a motive for her allegations against Grider, and (2) in her interview, Carlson did not corroborate Costen's version of events.

On February 22, 2022, a criminal complaint for sexual misconduct was prepared, executed under oath by Costen, and filed with the Auburn Municipal Court.  In the criminal complaint, Costen swore to the following facts:

> After my shift at Sky Bar on 1/19/21, the owner, Pat Grider, approached me and grabbed my nipples.  After he grabbed me he put his wrist to my face to make me smell his cologne and shoved the panties of a customer (balled in his hand) into my mouth and on my nose and face. He then asked me, "how much money would it cost for you to let me eat your pussy in the wetbox."  After declining he then offered me $200

to "make out" with him and then he offered me $500 after declining
$200.

(Doc. 31-7.)[1]  Based on the criminal complaint, the Auburn Municipal Court issued a warrant for Grider's arrest, which Johns executed that very same day.

Grider retained counsel, and his counsel got to work.  They filed a Request for Production of Information on Auburn, which, combined with the probable cause description from the criminal complaint, they used to determine the timing of the alleged incident.  They then had Sky Bar personnel check the bar's video recording system for recordings and were able to locate footage that contradicted Costen's accusations.  Copies were then given to the APD.

Nevertheless, Grider's prosecution continued, and on May 6, 2022, the sexual misconduct charge was tried before an Auburn municipal judge.  The municipal judge found Grider guilty of sexual misconduct, despite Grider's objection that he was being adjudicated guilty without having been placed on notice by the criminal complaint.  About two weeks later, Grider moved for a new trial, but his motion was denied.  Grider then appealed to the Circuit Court of Lee County, Alabama for a trial de novo before a Lee County jury.  It was only then that the Auburn ordinance (Ordinance 1130) for which Grider was being prosecuted was identified.  The jury ultimately acquitted Grider of the criminal charge.

In the interim—after Grider was found guilty in Auburn Municipal Court but before he was acquitted by a Lee County jury—"APD demanded that Grider report to the APD station and register as a sex offender, as well as subject himself to the verification and reporting requirements of the [Alabama Sex Offender Registration and Community Notification] Act." (Doc. 31 at ¶ 171.)  Over his protests, Grider registered as a sex offender.  Auburn and the APD then published a sex offender

---

[1] Costen appears to have mistakenly written 2021 as the date of the incident rather than 2022. Regardless, the date of the incident is not at issue here.

notification to thousands of individuals, and that notification included information about Grider's status as a sex offender.

Grider filed this action on May 1, 2023. Under the operative complaint, Grider brings claims against three defendants: the City of Auburn, Alabama; Stephanie Johns, in her individual capacity; and Kimberly Costen. Count I seeks a declaratory judgment on various factual and legal issues against Auburn; Count II brings a 42 U.S.C. § 1983 claim for substantive and procedural due process violations against Auburn; Count III brings a § 1983 claim for false arrest against Johns; Count IV brings a wantonness claim against Costen and Johns; Count V brings a negligence claim jointly against Auburn, Costen, and Johns; Count VI brings a negligent hiring, training, supervision, or retention claim against Auburn; Count VII brings a claim for tortious interference with business or contractual relations against Auburn; and Count VIII brings a libel and libel per se claim against Auburn. The Defendants have moved to dismiss all claims against them.

### III. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction over the federal issues raised in this case under 28 U.S.C. §§ 1331 and 1343, and jurisdiction over the state law claims under 28 U.S.C. § 1367. The parties do not contest personal jurisdiction or venue.

### IV. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

"To decide whether a complaint survives a motion to dismiss, [district courts] use a two-step framework." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of the truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Here, Grider "bear[s] the burden of setting forth facts that entitle [him] to relief." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019).

## V. DISCUSSION

### A. § 1983 Claim Against Auburn (Count II)

In Count II, Grider alleges that Auburn violated his substantive and procedural due process rights guaranteed to him by the Fourteenth Amendment. So far as the Court can distill, Grider makes three distinct due process allegations in this count. First, that the "Form CR-6, or like-kind forms," which were used as charging instruments at the instigation of Grider's prosecution, "fail[ed] to reference the

5

subject Ordinance, as well as the potential penalty for the violation of a municipal ordinance, fail[ed] to state an offense, fail[ed] to allege an element of an offense, and fail[ed] to invoke the subject matter jurisdiction of the Auburn Municipal Court." (Doc. 31 at ¶ 206.)  Second, that "Auburn's . . . mandating that individuals convicted by the Auburn Municipal Court of a violation of any reference ordinance adopting a misdemeanor Sex Offense . . . register as a Sex Offender with Auburn and/or APD **and/or** for the Sex Offender registration" contradicts Alabama state law.  (*Id.* at ¶ 208–09.)  And lastly, that Auburn published the sex offender registry list "outside of the radius required by the [Alabama Sex Offender Registration and Community Notification] Act for reporting registered Sex Offenders."  (*Id.* at ¶ 215.)

Cities, such as Auburn, are persons within the scope of § 1983, and are therefore subject to liability for violating a person's constitutional rights.  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).  But municipal liability under § 1983 can only occur in a narrow set of circumstances.  To impose § 1983 liability on a municipality, a plaintiff must show a constitutional violation that was caused by municipal policy or custom.  *Thomas v. City of Americus*, No. 22-11398, 2023 WL 2485464, at *2 (11th Cir. Mar. 14, 2023) (per curiam) (citing *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998)).

Auburn's motion to dismiss focuses on whether Grider's constitutional rights were violated and, if so, whether the FAC alleges sufficient facts that Auburn maintained a custom or policy that caused those violations.  As to the custom or policy prong, Auburn argues that the FAC fails to state a claim upon which relief may be granted because the FAC only pleads "conclusory allegations without any substantive facts showing a policy, pattern, or practice[.]"  (Doc. 35 at 7.)

The Court begins its analysis by considering whether Grider states a plausible claim that his due process rights were violated, and then analyzes whether the FAC sufficiently pleads an official or unofficial custom or policy.

### 1. Constitutional violation

The FAC is unclear as to whether each of Grider's three due process theories is pursued under a theory of substantive due process, procedural due process, or both.[2]  While Grider makes some argument as to his procedural due process claims, he offers very little by way of his substantive due process assertions.  This lack of argument leaves the Court with the unenviable task of sifting through the FAC to identify what substantive due process rights Grider believes to have been violated, as well as ascertaining precisely how Auburn allegedly violated those rights.

"To state a substantive due process claim, a plaintiff must allege (1) a deprivation of a constitutionally protected interest, and (2) that 'the deprivation was the result of an abuse of governmental power sufficient to raise an ordinary tort to the stature of a constitutional violation.'"  *Hoefling v. City of Miami*, 811 F.3d 1271, 1282 (11th Cir. 2016) (quoting *Executive 100, Inc. v. Martin Cnty.*, 922 F.2d 1536, 1541 (11th Cir. 1991)).  Moreover,

> conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense.  Acts intended to injure in some way unjustifiable by any government interest are most likely to rise to the conscience-shocking level.  We've never held that deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context.

*Thomas*, 2023 WL 2485464, at *3 (citations omitted) (cleaned up).  As in *Thomas*, where the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's substantive due process claim for failure to plead intent to harm, Grider pleads

---

[2] Grider's subsequent briefing does not clear this up either.

deliberate indifference, but never alleges Auburn *intended* to harm him. Thus, independent of whatever allegations Grider meant to present as substantive due process violations, the FAC fails to state a claim against Auburn because Grider does not plead that Auburn had the requisite intent—that is, intent to harm. Only pleading deliberate indifference is not enough. Since Grider fails to state a substantive due process claim of any sort, the Court proceeds to analyze Grider's three theories as alleged procedural due process violations.

"To allege a procedural due process violation under § 1983, a plaintiff must show '(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process.'" *Oden, LLC v. City of Rome*, 707 F. App'x 584, 586 (11th Cir. 2017) (per curiam) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). The Eleventh Circuit has written that, "as to the constitutionally inadequate process element" of a procedural due process claim,

> no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available. This is because the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy. As long as *some* adequate postdeprivation remedy is available, no due process violation has occurred because the state may cure a procedural deprivation by providing a later procedural remedy. Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.

*Lakoskey v. Floro*, No. 19-12401, 2021 WL 5860460, at *3 (11th Cir. Dec. 10, 2021) (citations omitted) (cleaned up).

Grider's assertions that Auburn violated his procedural due process rights through its use of the CR-6 form fails the "constitutionally inadequate process" prong of the procedural due process inquiry because Grider does not allege that the post-deprivation remedies underlying his CR-6 claim were constitutionally

inadequate.[3]   Moreover, Grider's claim fails because the FAC indicates that the remedies available to him *were* adequate—as evidenced by his appeal to, trial, and acquittal in the Lee County Circuit Court.  (*See* Doc. 31 at ¶ 44.)  In other words, the process Grider received—a de novo trial in the Circuit Court of Lee County—led to a not guilty verdict.  Grider had his day in court and he won.  As such, Grider has "failed to state a valid procedural due process claim because [he] ha[s] not alleged that Alabama law provided [him] with an inadequate post-deprivation remedy." *Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (per curiam).

Grider's two other procedural due process allegations—regarding sex offender registration and registry publication—are slightly different from his CR-6 claim because Grider is still allegedly listed as a sex offender in the APD's registry, meaning that his deprivation is ongoing.  (Doc. 31 at ¶ 190.)  But the extent of Grider's pleading of post-deprivation remedies as to these violations is that "[o]n April 17, 2023, Grider made demand that a retraction of Auburn's libelous statements be published," (*id.* at ¶ 186), which was declined, (*id.* at ¶ 187), and that a week later he "invited Auburn to contact Grider's attorneys before this suit was filed," (*id.* at ¶ 188), but that Auburn "refused to and/or failed to contact Grider's attorneys," (*id.* at ¶ 189).  In other words, Grider has attempted to remedy his due process violations by demanding a retraction and by inviting Auburn to speak with his attorneys.  So, just as with his CR-6 violation theory, the FAC does not allege inadequate state remedies for resolving the registration or publication violations. But "to state a procedural due process claim under § 1983, the [plaintiff] ha[s] to allege a constitutionally inadequate process."  *Roper v. Olson*, No. 1:12-CV-623-WKW, 2013 WL 4529804 (M.D. Ala. Aug. 26, 2013) (alterations in original) (quoting *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1207 (11th

---

[3] Indeed, the FAC does not say anything about the state remedies available to those who have defective CR-6 forms issued against them.

Cir. 2007)).   And further, while Grider makes no mention of the lack of state remedies in the FAC, he simultaneously seeks state law remedies through the assertion of state law claims for libel and libel per se, which belie any assertion of insufficiency of state remedies.[4]   *See Rogers v. Jackson Cnty.*, No. 5:22CV237-TKW-MJF, 2023 WL 3102618 (N.D. Fla. Apr. 26, 2023) (noting that a plaintiff's pleading that stated that state remedies were insufficient to remedy a procedural due process violation was "belied by the tort claims pled against the County later in the second amended complaint"); *Lakoskey*, 2021 WL 5860460, at *4 (finding that because the "complaint seeks essentially the same relief . . . for [a] procedural due process claim[] as [for a state law tort claim] against the same individual defendant[] for the same conduct," the "complaint shows that [the plaintiff] has an adequate postdeprivation remedy available[.]").   Accordingly, Grider has not stated a claim that sex offender registration and the registry's subsequent publication violated his procedural due process rights.  *See id.* at *3 ("If [the plaintiff] had a constitutionally adequate process to remedy the deprivation . . ., then she has not been denied procedural due process and we don't have to decide the . . . municipal liability issue." (citing *Myers v. Klevenhagen*, 97 F.3d 91, 96 (5th Cir. 1996) (per curiam) ("[B]ecause a postdeprivation state remedy existed, which the plaintiffs have failed to show was inadequate, [the plaintiffs have failed] to state an actionable constitutional claim under section 1983." (alterations in *Lakoskey*)))).

## 2.  Unofficial policy

Even if Grider had stated a claim that Auburn violated his due process rights, his sex offender registration and registry publication claims also do not satisfy the *Monell* analysis because they fail to plausibly state that Auburn had a custom or policy that led to the violation of his procedural due process rights.

---

[4] The Court only notes the libel and libel per se claim as indicative of the inadequacy of Grider's procedural due process assertion.

"A plaintiff . . . has two methods by which to establish a [municipality's] policy: identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker[.]" *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003).   But "a [municipality] rarely will have an officially-adopted policy of permitting a particular constitutional violation[.]" *Id.* at 1330.   As a result, "most plaintiffs . . . must show that the [municipality] has a custom or practice of permitting" the action complained of.   *Id.*   As to custom or practice, the Eleventh Circuit has "defined custom as 'a practice that is so settled and permanent that it takes on the force of the law,'" *McDowell*, 392 F.3d at 1290 (citation omitted), and has stated that "[a] custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy," *Grech*, 335 F.3d at 1330 n.6.

The FAC is unclear as to whether Grider is alleging that Auburn maintains official or unofficial policies or customs violating due process rights.[5]   Crucially, Grider never identifies, as he needs to in order to show *official* policy, an officially promulgated policy sanctioning any of the alleged constitutional violations

---

[5] Indeed, multiple portions of the FAC alleging *formal* Auburn policies permitting constitutional violations simultaneously allege *informal* policies permitting *the same* constitutional violations. For example, in discussing the CR-6 form, the FAC states that "for many years, APD, its officers and/or detectives, including Johns, have followed the long-standing pattern and/or practice, officially adopted, and/or implicitly adopted by Auburn and APD of preparing . . . Form CR-6 documents[.]"   (Doc. 31 at ¶ 16.)   (*See also id.* at ¶ 161 ("Auburn . . . ha[s] a written policy, practice, and custom . . . officially and/or implicitly affirmed by Auburn's policy makers of mandating that individuals convicted before the Auburn Municipal Court of a violation of any reference ordinance . . . wherein the underlying state misdemeanor offense is an alleged violation of Ala. Code (1975) § 13A-06-065 . . . will be published despite the Act prohibiting the same.")) This contradictory insistence that Auburn's policies are simultaneously official and unofficial suggests that Grider is simply reciting the elements of his cause of action rather than pleading facts showing an official or unofficial Auburn policy.   *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (citation omitted)).

perpetrated against him. *Grech*, 335 F.3d at 1329. *See also Monell*, 436 U.S. at 690 ("Local governing bodies . . . can be sued directly . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). Accordingly, the FAC fails to plead an *official* policy, and the Court therefore proceeds to consider whether the FAC pleads an *unofficial* policy.

To sufficiently allege an unofficial Auburn policy sanctioning the violation of Grider's due process rights, Grider must allege "a persistent and wide-spread practice." *McDowell*, 392 F.3d at 1290 (citation and quotation omitted). "A single incident would not be so pervasive as to be a custom or practice." *Grech*, 335 F.3d at 1330 n.6. *See also Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1299 (11th Cir. 2023) ("proving that a policy . . . or custom caused a constitutional harm would require Appellants to point to multiple incidents"); *Gold*, 151 F.3d at 1351 (finding that the municipality was entitled to judgment as a matter of law in a § 1983 claim where the plaintiff was unable to identify other incidents with similar facts); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy."); *Wayne v. Jarvis*, 197 F.3d 1098, 1106 (11th Cir. 1999) ("[a] single decision, even if erroneous, would not support the inference that the County had a custom or policy"), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). "This threshold identification . . . 'ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.'" *McDowell*, 392 F.3d at 1290 (citation omitted).

The FAC fails to plausibly allege that Auburn has a widespread practice of violating due process by requiring sex offender registration and by publishing the registry. While the FAC makes clear that Grider believes Auburn committed these

due process violations against him, it does not allege that these constitutional violations have happened to anyone else. Grider pleads absolutely no facts, besides his own experience, suggesting Auburn has an unofficial policy of violating due process rights, even though he "may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Id.* at 1293 (quoting *Colle v. Brazos Cnty.*, 981 F.2d 237, 245 (5th Cir. 1993)). Accordingly, the FAC fails to state a claim for Monell liability as to Grider's sex offender registration and publication claims.[6]

**B. § 1983 Claim Against Johns (Count III)**

Count III alleges that Detective Johns violated Grider's Fourth Amendment right to be free from unreasonable seizure when she arrested him based on Costen's false accusations. According to the FAC, "Johns arrested Grider on what she knew or should have known to be a facially deficient arrest warrant." (*Id.* at ¶ 222.) More specifically, "Johns knew or should have known that the warrant was issued without actual and/or arguable probable cause due to the content of the Criminal Complaint and its blatant deficiencies as drafted by Johns." (*Id.* at ¶ 223.)[7] Johns moves to dismiss the claim, arguing that she is entitled to qualified immunity.

---

[6] The Court notes that, as it pertains to Auburn's use of the CR-6 form, the FAC alleges that "[i]nnumerable individuals have been adjudicated guilty by the Auburn Municipal Court in quasi-criminal proceedings . . . based on fatally deficient charging instruments," (doc. 31 at ¶ 33 n.2), and that "[o]n information and belief, [Auburn's and APD's] practice [of either filling out the Form CR-6 in blank or delineating the relevant ordinance as 13-1] has literally been performed by Auburn and APD thousands of times over the past years," (*id.* at ¶ 106). While this was likely enough to plead an unofficial policy, Grider's procedural due process claim as to the CR-6 form nevertheless fails because, as discussed previously, he did not state a claim that his procedural due process rights were violated.

[7] In a manner characteristic of the FAC, Grider alleges that the criminal complaint contained scores of legal errors:

> Said Criminal Complaint failed to charge an offense, failed to place Grider on notice of the violation of any Auburn ordinance, failed to charge an essential element of any offense triable before Auburn Municipal Court, failed to place Grider on notice of any potential penalties for the violation of any offense, failed to

"Qualified immunity shields public officials from liability for civil damages[,]" *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019), unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established constitutional right." *Id.* But regardless, "[o]nce an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.*

The Eleventh Circuit has established a two-part analysis to determine whether a defendant is entitled to qualified immunity. First, a defendant must show that she was "engaged in a 'discretionary function' when [s]he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citation omitted). If "the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* To meet this burden, the plaintiff must show "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* The parties do not contest that Johns was engaged in a discretionary function when she

_____

vest the Auburn Municipal Court with subject matter jurisdiction, rendered the Arrest Warrant issued for the arrest of Grider void, and served to violate known and established constitutional rights of Grider as guaranteed Grider pursuant to the due process clause of the U.S. Constitution, as well as, and/or including Grider[']s IV, VI, and XIV U.S. Constitution Amendment rights.

(Doc. 31 at ¶ 101.)

arrested Grider, so the Court begins its analysis by determining whether the FAC alleges sufficient facts showing a violation of Grider's constitutional rights.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim[.]" *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). *See also Fish v. Brown*, 838 F.3d 1153, 1167 (11th Cir. 2016) ("An arrest is unreasonable and, therefore, violates the Fourth Amendment, when it is not supported by probable cause."). That said, "[t]he presence of probable cause will defeat § 1983 claims for unlawful seizures and malicious prosecution[.]" *Duncan v. City of Sandy Springs*, No. 20-13867, 2023 WL 3862579, at *4 (11th Cir. June 7, 2023) (per curiam).[8]

Although Grider can challenge the probable cause determination supporting his arrest warrant, a *false arrest* claim is not the appropriate cause of action for him to do so given that his arrest was pursuant to legal process. "The issuance of a warrant—even an invalid one as [the Plaintiff] alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest." *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (per curiam). Numerous courts have dismissed claims against law enforcement officials where the plaintiff brings a false arrest claim rather than a malicious prosecution claim after having been arrested pursuant to an arrest warrant. *See, e.g., Bender v. Zezulka*, No. 2:14-CV-1583-KOB, 2015 WL 4506683 (N.D. Ala. July 23, 2015) (on a motion for judgment on the pleadings, the court found that "[b]ecause [plaintiff]'s claim against [defendant] is based on the

---

[8] Even without probable cause, Johns would not be liable if she had arguable probable cause to arrest Grider. *See Fish*, 838 F.3d at 1167 ("Even if an officer has effected an arrest without probable cause (and without a warrant), he still will be entitled to qualified immunity if the arrest was supported by *arguable* probable cause."); *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994) ("The standard for arguable probable cause is whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law.").

issuance of a warrant, his claim . . . is for malicious prosecution not false arrest. Therefore, [defendant] is entitled to judgment on [plaintiff]'s false arrest claim."); *Spillers v. Crawford Cnty.*, No. 5:11-CV-324, 2011 WL 5910738, at *7 (M.D. Ga. Nov. 28, 2011) ("When a Fourth Amendment claim is based on a seizure that involves an arrest warrant or is otherwise pursuant to legal process, the claim should be analyzed as a section 1983 malicious prosecution claim rather than a section 1983 false arrest claim."). In a case involving a similar claim, the Northern District of Alabama wrote,

> even if the defendant was the arresting officer, and even if he assisted defendant Tracey Norman in bringing the charge and subsequent arrest warrant, this claim is wholly resolved by *Smith v. Gonzalez,* 670 F.2d 522 (5th Cir. 1982). In *Smith,* the Court held that "where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest." 670 F.2d at 526. Rather, the independent decision by a judge to issue the warrant breaks any causal chain between the officer and any constitutional violation.

*Norman v. Norman*, No. CV-12-J-2136-S, 2014 WL 457710, at *7 (N.D. Ala. Feb. 4, 2014) (cleaned up). *See also Wallace v. Kato*, 549 U.S. 384, 390 (2007) ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."); *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) ("A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests. These claims accrue when either the seizure ends or the plaintiff is held pursuant to legal process. Malicious prosecution, in contrast, requires a seizure pursuant to legal process." (citations and quotations omitted)); *Kelly v. Curtis,* 21 F.3d 1544, 1553– 54 (11th Cir. 1994) (treating an allegation that detectives should have known the

affidavit for an arrest warrant failed to establish probable cause as a malicious prosecution claim).

Since Grider cannot bring a false arrest claim for an arrest that occurred pursuant to an arrest warrant, he cannot plausibly state a claim that Johns violated his constitutional right to be free from false arrest.  As such, Grider fails the first prong of the qualified immunity analysis—and Johns is entitled to qualified immunity.  *See Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (concluding that "[b]ecause [plaintiff] has not established a Fourth Amendment violation, [the defendant] is entitled to qualified immunity on [plaintiff's] § 1983 . . . claim[.]").  Count III is therefore due to be dismissed.

### C. Declaratory Judgment Claim (Count I)

Count I is identified as a declaratory judgment claim against Auburn.  Auburn moves to dismiss the count on the basis that it fails to state a claim.

Grider's FAC "succumbs to the not infrequent mistake of characterizing declaratory judgment as a claim in itself.  It, however, is not a cause of action; it is a remedy."  *Burke v. Johnson,* No. 6:16-cv-199-Orl-41TBS, 2016 WL 9503732, at *3 (M.D. Fla. June 27, 2016).  *See also Feingold v. Budner*, No. 08-80539-CIV, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) ("Declaratory judgments . . . are equitable remedies, not causes of action. A plaintiff must prevail on an underlying claim in order to be entitled to either form of relief.").  Accordingly, "[i]n that sense, Plaintiff can be said to have failed to state a claim for declaratory judgment because it is not a claim."  *Burke,* 2016 WL 9503732, at *3.

Nevertheless, Grider can request declaratory relief as a remedy with regard to other claims, and the Court construes Plaintiff's attempt to state a claim for declaratory judgment as requesting such relief.  But Count II against Auburn (the substantive and procedural due process claim) fails to state a claim for relief upon which relief can be granted, so all that remains of Grider's claims against Auburn

are his state law claims.  And the same principles underlying dismissal of Grider's remaining state law claims, as further discussed below, apply here.  *See Feingold*, 2008 WL 4610031, at *2 ("Because the court has determined that [all counts] must be dismissed, there is no basis on which [the plaintiff] can prove entitlement to . . . a declaratory judgment[.]").  Accordingly, the Court declines to entertain Grider's declaratory judgment claim as it concerns issues of state law.  *See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2018 WL 4932282, at *2 (S.D. Fla. Oct. 10, 2018), *aff'd sub nom. Tropical Paradise Resorts, LLC v. Point Conversions, LLC*, 806 F. App'x 966 (Mem.) (11th Cir. 2020) ("Pursuant to the plain language [of the Declaratory Judgment Act], a district court's ability to grant relief under the Act is permissive[.]").  *See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (the "Declaratory Judgment Act [is] 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" (citation omitted)); *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (per curiam) (stating that the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so.").

**D. State Law Claims (Counts IV–VIII)**

What remains are Grider's state law claims for wantonness (Count IV); negligence (Count V); negligent hiring, training, supervision, or retention (Count VI); tortious interference (Count VII); and libel and libel per se (Count VIII).  In other words, only state law claims survive.

District courts have discretion to decline to exercise supplemental jurisdiction over a claim arising under state law when: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional

circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

> If, after examining the factors listed in § 1367(c), the district court decides that it has the discretion to decline to [exercise] jurisdiction, it should consider the traditional rationales for pendent jurisdiction in deciding whether or not to exercise that jurisdiction, including judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together.

*McWaters v. Houston*, No. 2:21-CV-57-RAH-SMH, 2022 WL 395309, at *14 (M.D. Ala. Feb. 8, 2022) (citation and quotation omitted). Moreover, "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "Both comity and economy are served when issues of state law are resolved by state courts." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). *See also Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997) ("State courts, not federal courts, should be the final arbiters of state law.").

The Court finds that comity and judicial economy are better served by declining to decide the state law matters involved in this case. Accordingly, pursuant to § 1367(c)(3), Counts IV, V, VI, VII, and VIII will be dismissed without prejudice. Defendant Kimberly Costen's Counterclaim will be dismissed without prejudice for the same reasons.

## VI. CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Defendant City of Auburn and Defendant Stephanie Johns's *Motion to Dismiss Plaintiff's First Amended Complaint* (doc. 35) is **GRANTED in part**. Count II (substantive and procedural due process claim against Defendant Auburn) and Count III (false arrest claim against Defendant Johns) are **DISMISSED without**

**prejudice** for failure to state a claim upon which relief can be granted.  Count I (declaratory judgment claim against Defendant Auburn), Count IV (wantonness claim against Defendant Johns), Count V (negligence claim against Defendant Auburn and Defendant Johns), Count VI (negligent hiring, training, supervision, or retention claim against Defendant Auburn), Count VII (tortious interference with business or contractual relations claim against Defendant Auburn), and Count VIII (libel and libel per se claim against Defendant Auburn) are **DISMISSED without prejudice**.

(2)   Defendant Kimberly Costen's *Motion to Dismiss Plaintiff's First Amended Complaint* (doc. 34) is **DENIED as moot**.

(3)  Defendant Kimberly Costen's Counterclaim (doc. 41) is **DISMISSED without prejudice**.

(4)  The Clerk of Court is **DIRECTED** to close the case.

**DONE**, on this the 21st day of March, 2024.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE